# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## SECOND DISTRICT—OCTOBER TERM, 1899.

### Charles J. Spurck et al. v. L. D. Benner.

1. CONTRACTS—*Recovery Upon an Afterthought Not Sustained.*—
Where the recovery sought by a party to a contract is founded upon an
afterthought of the party and not within the contemplation of the
parties to the contract at the time the contract was made, the recovery
can not be sustained.

2. VERDICTS—*Not Sustained by the Evidence.*—Where a verdict is not
sustained by the evidence the judgment founded upon must be reversed.

Assumpsit, for royalties, etc. Appeal from the County Court of
Peoria County: the Hon. R. H. LOVETT, Judge, presiding. Heard in
this court at the October term, 1899. Reversed and remanded. Opinion
filed February 1, 1900. Rehearing denied April 6, 1900.

GEORGE B. FOSTER, attorney for appellant.

ROBERT N. McCORMICK, attorney for appellee.

MR. PRESIDING JUSTICE CRABTREE delivered the opinion of
the court.

Appellants, Charles J. Spurck and George A. Spurck,
together with Walter L. Spurck and Henry S. Hartz, were
copartners in business at Peoria, under the firm name of
" Union Corn Planter Company," engaged in the manu-
facture of corn planters.

Appellee sued them in this action of assumpsit, to
recover an amount which he claimed was due to him from
them, for the use of certain patents owned by him, for shop

(79)

rights to manufacture under said patents, for royalties, and also for services as a mechanical engineer, alleged to have been performed for said firm in their factory at Peoria.

Appellants, Charles J. and George A. Spurck, only, were served, the other two defendants being not found.

The declaration contained a count for royalties, claiming $300 therefor, and also a count for the services alleged to have been performed, laying the damages at $700. Attached to the declaration as the account sued on, was a copy of a contract entered into between the parties, dated November 16, 1896, which will hereafter be more particularly referred to.

The defendants pleaded the general issue. There was a trial by jury, and the plaintiff obtained a verdict for $600. A motion for new trial was overruled and the defendants prosecute this appeal.

As grounds for reversal it is urged that the court admitted improper testimony for appellee, rejected proper testimony offered by appellants, erroneously instructed the jury, and that the verdict is not supported by the evidence.

It appears from the evidence that appellants' firm entered into a contract with appellee on July 18, 1896, whereby they agreed to pay him twenty-five cents each as royalty on every planter manufactured by them under certain patents owned by appellee, or owned by him jointly with others.

Under this contract, during the season of 1896 and 1897, appellants' firm manufactured 900 planters and paid appellee $225 as royalties thereon, as appears by his receipts introduced in evidence.

During the season of 1897 and 1898, they manufactured 200 planters and paid appellee royalties thereon to the amount of $50, as also appears by his receipt introduced in evidence. We do not understand it to be denied that appellee has received as royalty twenty-five cents each on all the 1,100 planters manufactured during the seasons above mentioned, but he now claims twenty-five cents additional on each of said planters, under the contract of November 16, 1896. That contract, being the one sued on in this case, was as follows:

" Duplicate.                    PEORIA, ILL., Nov. 16, 1896.

An agreement entered into this day and date between the Union Corn Planter Company, party of the first part, and L. D. Benner, party of the second part, it is hereby agreed that in consideration of the sum of one dollar, which receipt is hereby acknowledged, that on September 1st, in 1897 (' should the Union Corn Planter Co. desire to purchase the same'), I am to sell and convey to them all my rights, titles and interest in my corn planter and check rower patents No. 519,892, patent No. 546,482 and patent No. 546,486, with the exception of the license granted to the Emerson Talcott Co., of Rockford, Ill., who have a license to use the above patents, and also the said Union Corn Planter Co. are not to build my planter where boxes are set and operated diagonally on planter; to make it more clearly, they are not to build said planter under this agreement, but they have the right to use any or all of my patents in connection with the planter, in building all their styles of planter, and for all of the above, they are to pay me in case the said Union Corn Planter Co. wishes to purchase outright my patent as stated above, the sum of two thousand ($2,000) dollars in three payments as follows :

One note due October 1, 1897, for $666.66, one note due July 1, 1898, for $666.66, and one note due January 1, 1899, for $666.66; but in case they do not care to purchase patents, they are to pay me as royalties on all planters that they may build using my patents, the sum of twenty-five cents for each planter, same to be paid in cash October 1, 1897. It is also hereby agreed that in case the said L. D. Benner wishes to use any or all his patents in building himself or others what is called the Quincunx planter, patent No. 529,492, which covers where one runner is placed in front of the other, that he or they have a right to do so; but in case of purchase of the above three patents by the said Union Corn Planter Co., it is also hereby agreed in addition that they are to have a shop right in any or all of patents that I may own or have an interest in, with the exception of the Quincunx, No. 529,492, as stated above.

This agreement shall be binding in every respect to both parties, whose names are hereto attached.

                        UNION CORN PLANTER Co., [SEAL.]
                                per Hartz.

Witness:    M. D. SPRUCK,
            L. D. BENNER.    [SEAL.] "

Beyond the option given the Union Corn Planter Com-

pany for the purchase of the patents referred to, it is certainly far from clear as to what the parties intended by the second agreement. Whether it was intended as an abrogation of the first contract is not made to appear from the evidence. While we are at a loss to know what was the real intention of the parties, we find no warrant for holding that they intended to provide for the payment of an additional royalty of twenty-five cents on each planter manufactured, so as to require appellants' company to pay fifty cents on each planter as such royalty. The action of the parties thereafter would seem to be at variance with any such idea. Appellants paid the royalty of twenty-five cents on each planter; appellee accepted and receipted for such payments without making any claim at the time for additional royalty. August 16, 1897, he receipted for $40, August 25, 1897, he receipted for $185, making $225, and being the amount of the royalty at twenty-five cents each on 900 planters manufactured during the season of 1896 and 1897. On July 1, 1898, he gave the following receipt:

" Received of the Union Corn Planter Company the sum of fifty ($50) dollars for royalties for two hundred (200) planters made during the season of 1897 and 1898, and to apply on royalty and shop right as per contract dated July 18, 1896.

L. D. Benner."

The contract of November 16, 1896, provided that the royalties under that contract should be paid in cash, October 1, 1897; yet here was a receipt given in July, 1898, for the royalties at twenty-five cents under the contract of July 18, 1896, and no reference made to the contract of November 16, 1896, under which appellee now claims an additional royalty of twenty-five cents each on the same planters specified in the receipt. It would seem to us, that if it was the understanding of the parties that the royalty should be fifty cents instead of twenty-five cents, it would have been the most natural thing that appellee should have made that claim at the various times when the royalties were paid, and he receipted for them. But there is no evidence that he did any such thing. On the contrary the proofs are that he did not. It appears

to us, therefore, that the attempt to claim a royalty of twenty-five cents additional to that provided for in the contract of July 18, 1896, was an after-thought and not within the contemplation of the parties at the time the contract of November 16, 1896, was entered into. The object of the last mentioned agreement seems to have been to give the corn planter company an option to purchase the interest of appellee in the patents. This was what the parties called it in another agreement made the same day, which was as follows:

"Peoria, Ill., November 16, 1896.

For option given under agreement regarding the purchase of certain patents, which is shown in other agreement given under this date. The Union Corn Planter Co. is to give employment to the said L. D. Benner for six months, from November 16, 1896, to May 16, 1897, at $60 per month, and he is to perform services of a traveling salesman, and any experting we may have to do.

Union Corn Planter Co.
Hartz.    [Seal.]
L. D. Benner."

Our conclusion is that so far as the verdict included any amount for these additional royalties, it was not warranted by the evidence.

As to the claim for services—having in view the dealings of the parties, and bearing in mind the subsequent written contract for employment, last above set forth—we are not satisfied that the evidence warrants a recovery for services from June 1, 1896, to November 16, 1896, which is the time covered by the claim in the account sued on. It is admitted appellee was fully paid for the time covered by the written contract, and from his own testimony it appears he did not intend to make any charge for prior services until after a controversy arose between the parties, and then for the first time he made the claim now insisted upon. No agreement to pay for services is proven, except that contained in the written contract, but he seeks now to recover on an implied assumpsit for labor and services. That he was around appellants' factory, more or less, appears from the evidence, but there is nothing to show he

was there at the request of appellants, or that they had any reason to suppose he was there under an expectation of payment from them for his time. So far as the evidence goes it would seem to show to the contrary. He was engaged in developing machinery under his own patents, apparently with the hope the machine would prove a success and that he would be compensated by large receipts from royalties. We are of opinion the verdict was not sustained by the evidence.

We think the defendants were too much restricted by the court in their attempts to show the actual status of appellee in and about their factory during the time he claims pay for services, but we would not reverse for that alone were the evidence clear and convincing as to appellee's right to recover.

We think there is no serious fault to be found with the action of the court in giving and refusing instructions, but for the reason that the evidence is insufficient to support the verdict the judgment will be reversed and the cause remanded.